## AFFIDAVIT IN SUPPORT OF AN APPLICATION FOR A SEARCH WARRANT

I, Sean P. Doyle, United States Postal Inspector, being duly sworn, depose and state as follows:

### I.     INTRODUCTION

1. I have been employed as a Postal Inspector by the United States Postal Inspection Service ("USPIS") since July 2016.  I was assigned to the USPIS Connecticut and Western Massachusetts Major Crimes Team from 2016 through August of 2019.  In August of 2019, I transferred to the USPIS Manchester, NH Prohibited Mail Narcotics/ Miscellaneous Crime Team.  On these teams, my duties and responsibilities include, but are not limited to, the investigation of the illegal shipment of narcotics and narcotics proceeds, as well as the laundering of drug proceeds via the United States Postal Service ("USPS").  I have intercepted numerous USPS Priority Mail Express or Priority Mail parcels which were found to have contained controlled substances and/or the proceeds from the sales of controlled substances through the United States Mail.  Prior to becoming a U.S. Postal Inspector, I was employed for ten years as a police officer for the Town of Londonderry, New Hampshire.

2. I have received extensive training in criminal investigations, procedures and criminal law, and I have assisted senior postal inspectors and other law enforcement agents in numerous criminal investigations and in the execution of search warrants.  I have received training from the USPIS in the investigation of controlled substances and proceeds/payments for controlled substances being transported through the United States Mail. I have also received asset forfeiture training and have consulted with senior postal inspectors and asset forfeiture specialists.

3. I am a law enforcement officer of the United States within the meaning of Title 18 U.S.C. § 3061, and am empowered by law to conduct investigations and make arrests for offenses enumerated in Title 21 U.S.C. §841(a)(1), distribution of controlled substances, Title 21 U.S.C. §843(b), use of a communications facility in the commission of narcotics trafficking offenses, Title 21 U.S.C. §846, conspiracy to possess with intent to distribute and distribution of controlled substances and other federal offenses.

4. The information set forth in this affidavit is based on an investigation other law enforcement agents and I are conducting. This affidavit does not contain every fact known to me with respect to this investigation. Rather, it contains those facts I believe to be necessary to establish probable cause for issuance of this search warrant.

II. **GENERAL BACKGROUND CONCERNING THE SHIPMENT OF DRUGS AND DRUG SALE PROCEEDS THROUGH THE UNITED STATES MAILS**

5. Based on my training and experience, I know that individuals shipping controlled substances via the United States Mail primarily utilize Priority Mail Express and Priority Mail because of the speed, reliability, free telephone and internet package tracking service, as well as the perceived minimal chance of detection. Mailers often use fictitious names and/or fictitious return addresses to prevent them from being identified and apprehended by law enforcement.

6. Based on my training and experience, I know that narcotics traffickers often send their illegal narcotics through the mail from source states, such as California, Arizona, Texas, Nevada and the U.S. Territory of Puerto Rico.

### III. DESCRIPTION OF THE SUBJECT PARCEL

7. Based on the information contained in this affidavit, there is probable cause to believe, and I do believe, that a Priority Mail parcel displaying an "Easypost" Priority Mail epostage label, bearing tracking number 9405536897846158717584, addressed to "ZAW OO 18 ½ SOUTH ST APT 5 LEBANON NH 03766-2517" and bearing a return address of "BETHANY GOLDE 7540 PUERTO RICO DR BUENA PARK CA 90620-1268" (the "Subject Parcel"), contains controlled substances. Images of the Subject Parcel are incorporated herein:

 

8. The Subject Parcel measures approximately 8.6875" x 5.4375" x 1.75", weighs approximately 0 pounds, 4.625 ounces, and bears $5.86 in postage. The parcel was mailed on November 27, 2019, from Buena Park, CA 90620.

## IV.   INVESTIGATION TO DATE

9. On November 14, 2019, members of the Drug Enforcement Administration ("DEA"), New Hampshire Drug Task Force ("NHDTF") and Lebanon, NH Police served arrest warrants on Shane Lurvey and David Ferraro related to the sale methamphetamine. Both subjects were believed to be staying at 18 ½ SOUTH ST. LEBANON NH 03766.  During the course of the investigation, it was determined Lurvey was staying in apartment 5 and Ferraro was staying in apartment 6.

10. Both Lurvey and Ferraro were located and taken into custody on November 14, 2019. During the search of Lurvey's person incident to arrest, an officer located a small ziplock style baggie which contained trace amounts of a substance consistent with the properties of methamphetamine.

11. During the arrest of Lurvey, an officer spoke with a female by the name of Loeun Sith at 18 ½ SOUTH ST. APT 5. Sith advised APT 5 belonged to her and her husband, later identified as LIN ZAW.  Sith advised LIN ZAW was at work in White River Junction, Vermont, where he worked in computer repair.  The officer asked Sith for her consent to search APT 5.  Sith agreed and consented to the search of APT 5.

12. The officer searched the residence and located a quantity of marijuana in plain view, as well as a piece of drug manufacturing equipment he recognized as a vacuum chamber kit. The system appeared to be set up to extract the THC content from marijuana. In this same area, the officer also observed packaging materials which based on his training and experience appeared consistent with materials used to package controlled illicit drugs. Additionally, investigators located what appeared to

be THC extractions inside of silicone containers, in a cabinet next to the couch in the living room.

13. While on scene, LIN ZAW arrived and spoke with the officer. The officer advised LIN ZAW of the arrests and the consent search. The officer questioned LIN ZAW about the drug manufacturing equipment that was located. LIN ZAW told the officer that the equipment was his and that he "messes around" extracting THC from marijuana. The officer also informed LIN ZAW of the THC extracts found in several containers in the cabinet next to his couch, and again LIN ZAW advised the THC extracts were his.

14. Simultaneously, other officers spoke with Ferraro at the Lebanon, NH Police Department. During the interview, Ferraro admitted that he had been purchasing, distributing, and using methamphetamine. He estimated that he had approximately five to six customers that purchased methamphetamine from him. Ferraro claimed that the methamphetamine he sold was purchased through the use of the dark web. Ferraro stated he directed his neighbor, "Zaw," to purchase methamphetamine through the dark web. Ferraro stated he had been directing Zaw to purchase his methamphetamine since the middle of the summer of 2019. Ferraro instructed Zaw to order about two to four ounces of methamphetamine per week. The money was held in escrow until Ferraro and Zaw confirmed their deliveries of the methamphetamine. Ferraro advised the methamphetamine was typically delivered via the United States Postal Service, as was customary of dark web methamphetamine retailers.

15. Ferraro told investigators that he paid Zaw $400 cash, per ounce of methamphetamine. Ferraro would typically sell the ounce of methamphetamine for $800. Ferraro said the quality of methamphetamine that they purchased through the

internet was average. Ferraro added that a shipment of methamphetamine was due to be delivered around the date of the interview.

16. Investigators relayed the information provided during the interview of Ferraro to the officer who was still at 18 ½ SOUTH ST. speaking with LIN ZAW. LIN ZAW was questioned about being the purchaser of methamphetamine via the dark web and receiving that methamphetamine via the Unites States Postal Service. LIN ZAW admitted to the officer that he had been receiving packages of methamphetamine in the mail. LIN ZAW first stated that he was only getting a few grams at a time in the mail, but then agreed that he may have been getting larger quantities. LIN ZAW also admitted to "giving" the methamphetamine from those packages to Ferraro and Lurvey to "get rid of."

17. While questioning LIN ZAW about the purchase of methamphetamine via the dark web and receiving it through USPS, the officer learned that investigators had located USPS packages in the basement, with opened mylar packaging inside. The contents of the mylar packaging had been removed. From my training and experience and in communication with other agents, I recognize this packaging as consistent with narcotics being mailed through the USPS. ZAW was questioned about the packages and admitted that some of the packages may have contained methamphetamine.

18. Inspectors began monitoring mail going to the 18 ½ South St. Apt. 5 address. On or about Friday, November 29, 2019, Postal Inspectors in New Hampshire identified the Subject Parcel as a parcel possibly containing a controlled substance.

19. A review of USPS databases indicates that LIN ZAW is registered with the USPS to receive notifications of his mail via informed delivery. The USPS account is registered to Zaw Oo at 18 ½ SOUTH ST APT 5 LEBANON NH 03766-2517. The

email listed on the account is zaw9c1@gmail.com and the phone number listed is 603-249-6681.  A check of the law enforcement database CLEAR, which has proven reliable in previous investigations, lists this number as belonging to LIN ZAW.

## V. CANINE POSITIVE RESPONSE TO PACKAGE

20. On December 2, 2019, I contacted a New Hampshire State Police trooper and requested that he and his narcotic-trained K-9 review the Subject Parcel for the scent of controlled substances.  The trooper informed me that he uses the K-9 in the detection of controlled substances in different situations, including within sealed packages shipped through the United States Mail and other courier services. The trooper further informed me that he and the K-9 successfully completed the New England State Police Administrator's Conference canine certification process and that their certification is current. The certification process involves a comprehensive test designed to measure the ability of the dog and the handler in searching for and indicating the presence of narcotics. This certification is administered in different environments with a variety of distractions and is designed to duplicate actual field conditions that may be encountered by the canine team. The Subject Parcel was individually placed among four other similar sized parcels.  Upon examination of the parcels, the trooper advised that the K-9 had exhibited a significant change of behavior, consistent with the presence of a narcotic odor emanating from the Subject Parcel.  The parcels, including the Subject Parcel, were rearranged in different positions on the floor, and the handler and canine were called in again.  The trooper advised that the K-9 had again exhibited a significant change of behavior, consistent with the presence of a narcotic odor emanating from the Subject Parcel.

21. The trooper stated that although the K-9 did not complete his alert with a sit and stare, he displayed a significant change in behavior, to include nose bumping and paw slapping, which through the trooper's training and experience, was an indication of the presence of a narcotic odor coming from the Subject Parcel.

22. On December 5, 2019, I was contacted by an employee of the West Lebanon Post Office. The employee advised me that on December 4, 2019, an individual who identified himself as "Zaw" called inquiring about a package to 18 ½ South St. Apt. 5 Lebanon, NH. The employee stated that Zaw specifically asked about the package which was being mailed from Buena Park, CA. The employees advised they would look into the whereabouts of the parcel and asked for a callback number. Zaw provided a phone number of 603-249-6681.

## VI.   CONCLUSION

23. Based on the facts described above, I believe that there is probable cause to believe that the Subject Parcel described above contains controlled substances or other items relevant to drug trafficking in violation of Title 21, United States Code, Sections 841(a)(1) (possession with intent to distribute and distribution of controlled substances), 843(b) (use of a communication facility in the commission of a controlled substances trafficking offense), and 846 (conspiracy to possess with intent to distribute and distribution of controlled substances).

24. Accordingly, I respectfully request that this Court issue a search warrant authorizing the search of the Subject Parcel for contraband and evidence of violations of Title 21, United States Code, Sections 841(a)(1), 843(b), and 846, including controlled substances, records relating to controlled substance delivery, and/or records relating

to the identity of the individual who shipped the package or the intended recipient of the package.

          /s/ Sean P. Doyle
          SEAN P. DOYLE
          UNITED STATES POSTAL INSPECTOR

Subscribed and sworn to before me this __5th__ day of December 2019.

_____
HONORABLE ANDREA K. JOHNSTONE
UNITED STATES MAGISTRATE JUDGE